UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re SANDISK SSDs LITIGATION. | Case No. 23-cv-04152-RFL (LJC) |
| | **ORDER RESOLVING DISCOVERY LETTER BRIEF REGARDING INSTRUCTIONS NOT TO ANSWER** |
| | Re: Dkt. No. 164 |

The parties have filed a joint discovery letter brief addressing instances where defense counsel instructed Defendant SanDisk LLC's Rule 30(b)(6) witness Dr. Matthew White not to answer certain questions at a deposition. Those instructions fall in two general categories: instructions not to answer questions that defense counsel believed fell outside the scope of the deposition notice, and instructions not to answer based on attorney-client privilege.

Defendants have apparently conceded, correctly, that they were wrong to instruct White not to answer questions based on the scope of the notice.[1] ECF No. 164 at 3 n.1. Defendants have agreed to reopen the deposition to allow Plaintiffs to ask those questions again, as well as any relevant follow-up questions that might flow from White's answers. *Id.*

The parties dispute, however, the extent to which Plaintiffs should be permitted to ask White about the purpose and nature of SanDisk employees' discussions with counsel to determine whether such discussions fall within the scope of attorney-client privilege.

Questions of privilege in this diversity jurisdiction case are governed by California law. Fed. R. Evid. 501. "[T]o determine whether a communication is privileged, the focus of the

---

[1] Although not meaningfully addressed by the parties, instructions not to answer for other reasons unrelated to privilege are also generally improper. *See e.g.*, ECF No. 164-1 at 16 (Tr. at 128:12–13 ("[Defense counsel]: You already answered the question. I'm going to instruct you not to answer.")).

1  inquiry is the dominant purpose of the relationship between the parties to the communication."

2  *Clark v. Superior Ct.*, 196 Cal. App. 4th 37, 51 (2011).  Where the "dominant purpose of the

3  relationship between the parties to the communication was one of attorney-client, the

4  communication is protected by the privilege."  *Id.*  Even when an attorney-client relationship is

5  established, however, "the inquiry turns on . . . the link between the content of the communication

6  and the types of communication that the attorney-client privilege was designed to keep

7  confidential.  For a communication to be privileged, it must be made for the purpose of the legal

8  consultation, rather than some unrelated or ancillary purpose."  *L.A. Cty. Bd. of Supervisors v.*

9  *Superior Ct.*, 2 Cal. 5th 282, 297 (2016).

> There are additional relevant limitations on the attorney-client privilege. It is established that otherwise routine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is "copied in" on correspondence or memoranda. In addition, [a party] may not shield facts, as opposed to communications, from discovery. Any relevant fact may not be withheld merely because it was incorporated into a communication involving an attorney. In addition, [i]t is settled that the attorney-client privilege is inapplicable where the attorney merely acts as a negotiator for the client, gives business advice or otherwise acts as a business agent.

17  *Zurich Am. Ins. Co. v. Superior Ct.*, 155 Cal. App. 4th 1485, 1504 (2007) (cleaned up); *see also,*

18  *e.g.*, *Chi. Title Ins. Co. v. Superior Ct.*, 174 Cal. App. 3d 1142, 1151 (1985).

19  Defendants apparently acknowledge that at least some inquiry into the threshold question

20  of whether attorneys engaged in nonprivileged communications is appropriate, noting that the

21  witness (eventually) was allowed to answer and in fact answered a question as to why SanDisk

22  chose to involve counsel in discussions about a public relations decision.  *See* ECF No. 164-1 at

23  20 (Tr. at 160:7–161:20).

24  Plaintiffs argue that White also should have answered other questions along the same lines,

25  such as: "Did counsel ever instruct you that the company should not disclose the existence of

26  defects so that they can continue selling the products and continue profiting off of them?"  ECF

27  No. 164 at 2 (quoting ECF No. 164-1 at 19 (Tr. at 157:11–18)).  Plaintiffs' counsel likely intended

28  that question to explore whether counsel provided non-privileged business advice, but the question

2

is inartfully framed, such that it could sweep in privileged communications—for example, if counsel advised other SanDisk employees that a contemplated disclosure would create serious risk of litigation or government enforcement that in turn might prevent further sales. Other questions that White was instructed not to answer are better tailored to nonprivileged communications, and should have been answered. *E.g.*, ECF No. 164-1 at 19 (Tr. at 157:4–6) ("Did counsel ever instruct you not to make public statements about defects because it would provide bad PR for the company?"). To the extent that SanDisk suggests that all such questions were redundant to the question White ultimately answered, the Court disagrees.

When the deposition reconvenes, Plaintiffs may ask White questions going to whether attorneys provided SanDisk employees with business advice (including public relations advice) as distinct from legal advice. Plaintiffs' counsel should take care to tailor such questions carefully to seek only nonprivileged communications. If counsel in fact provided nonprivileged business advice, Plaintiffs may ask about the substance of those communications.

Finally, Plaintiffs suggest that the witness acted improperly by giving certain looks to defense counsel and that defense counsel's smile when discussing an objection suggested improper motive, though Plaintiffs make no specific request for relief based on that conduct. *See* ECF No. 164-1 at 9 (Tr. at 84:8–11), 16 (Tr. at 128:23–129:3). Even accepting Plaintiffs' characterization of the witness's conduct, without more, the Court finds no impropriety in a witness checking to see if his attorneys intend to make an objection before answering a question at a deposition. Similarly, an attorney's amusement during a deposition is not inherently improper, and a smile does not in itself indicate that the attorney made an objection for an improper purpose.

**IT IS SO ORDERED.**

Dated: May 22, 2025

LISA J. CISNEROS
United States Magistrate Judge