UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re SANDISK SSDs LITIGATION. | Case No. 23-cv-04152-RFL (LJC)<br><br>**ORDER REGARDING PRIVILEGE DISPUTES AFTER IN CAMERA REVIEW**<br><br>Re: Dkt. No. 176 |

## I.  INTRODUCTION

The parties previously met and conferred over Plaintiffs' challenges to a large number of Defendants' assertions of attorney-client privilege, and "Defendants agree[d] to withdraw privilege designations for the vast majority of documents originally withheld from production." ECF No. 176 at 1.  The parties narrowed their dispute to eight documents, which Defendants agreed to submit for in camera review.  *See* ECF Nos. 176, 177.  The Court addresses those documents below.  Defendants filed an additional letter and declaration of Defendants' Assistant General Counsel Ravi Puri in support of their privilege assertions, ECF Nos. 184, 184-1, while Plaintiffs elected to rest on the arguments presented in the parties' joint letter seeking in camera review, *see* ECF No. 176.

For the reasons discussed below, the Court finds some of Defendants' privilege assertions to be unsupported, and ORDERS Defendants to produce documents consistent with this Order no later than August 7, 2025, unless Defendants file a motion for relief under Civil Local Rule 72-2 by that deadline.

## II.  LEGAL STANDARD

"[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."  Fed. R. Evid. 501.  California law therefore applies to issues of

privilege in this multi-district litigation, at least absent any showing that the law of some other state should apply. *See Holley v. Gilead Scis., Inc.*, No. 18-cv-06972 JST (JSC), 2021 WL 2371890, at *2 (N.D. Cal. June 10, 2021) (applying California choice-of-law rules to conclude that California privilege law applied in a case with "factual connections to multiple states," where no party introduced evidence of a conflict of laws or another state's governmental interest in applying its own law).[1]

Under California law, the attorney-client privilege is governed by statute and applies to confidential communications between client and lawyer during the course of the attorney-client relationship. *See* Cal. Evid. Code §§ 911, 954, 952. "The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise." *Costco Wholesale Corp. v. Superior Ct.*, 47 Cal. 4th 725, 733 (2009). "Once that party establishes facts necessary to support a prima facie claim of privilege," then the privilege is presumed to apply, and "the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." *Id.*

"[T]o determine whether a communication is privileged, the focus of the inquiry is the dominant purpose of the relationship between the parties to the communication." *Clark v. Superior Ct.*, 196 Cal. App. 4th 37, 51 (2011). Where the "dominant purpose of the relationship between the parties to the communication was one of attorney-client, the communication is protected by the privilege." *Id.* "[T]he relevant inquiry is not the content of the communication but is instead the relationship of the communicators." *Id.* at 52. If "the communications were made during the course of an attorney-client relationship"—as opposed to a relationship with some other "dominant purpose"—then "the communications, including any reports of factual material, would be privileged, even though the factual material might be discoverable by some other means." *Costco*, 47 Cal. 4th at 740. Even when an attorney-client relationship is established, however, "the inquiry turns on . . . the link between the content of the communication

---

[1] The Court previously directed "that if any party disputes that California law governs privilege in this action, they must address that issue in a letter brief." ECF No. 177 at 2. No party raised any objection to the application of California law.

2

and the types of communication that the attorney-client privilege was designed to keep confidential. In order for a communication to be privileged, it must be made for the purpose of the legal consultation, rather than some unrelated or ancillary purpose." *L.A. Cty. Bd. of Supervisors v. Superior Ct.*, 2 Cal. 5th 282, 297 (2016) (adopting the reasoning of a concurring opinion in *Costco*).

California courts have recognized "that in order to implement the advice of lawyers, the advice must be communicated to others within the corporation," and "[i]t is neither practical nor efficient to require that every corporate employee charged with implementing legal advice given by counsel for the corporation must directly meet with counsel or see verbatim excerpts of the legal advice given" as a condition of maintaining privilege. *Zurich Am. Ins. Co. v. Superior Ct.*, 155 Cal. App. 4th 1485, 1498 (2007). A communication between non-lawyer employees that conveys privileged attorney advice remains privileged so long as sharing that information with the recipient "further[s] the interest of the client in the consultation or . . . is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted." *Id.* at 1503 (quoting Cal. Evid. Code § 952).

> There are additional relevant limitations on the attorney-client privilege. It is established that otherwise routine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is "copied in" on correspondence or memoranda. In addition, [a party] may not shield facts, as opposed to communications, from discovery. Any relevant fact may not be withheld merely because it was incorporated into a communication involving an attorney. In addition, [i]t is settled that the attorney-client privilege is inapplicable where the attorney merely acts as a negotiator for the client, gives business advice or otherwise acts as a business agent.

*Id.* at 1504 (cleaned up); *see also, e.g.*, *Chi. Title Ins. Co. v. Superior Ct.*, 174 Cal. App. 3d 1142, 1151 (1985).

Applying federal law, courts have held that "[n]o privilege can attach to any communication as to which a business purpose would have served as a sufficient cause, i.e., any communication that would have been made because of a business purpose, even if there had been no perceived additional interest in securing legal advice." *Wisk Aero LLC v. Archer Aviation Inc.*,

3

No. 21-cv-02450-WHO (DMR), 2023 WL 2699971, at *4 (N.D. Cal. Mar. 29, 2023) (quoting *McCaugherty v. Siffermann*, 132 F.R.D. 234, 238 (N.D. Cal. 1990), and citing *Fisher v. United States*, 425 U.S. 391, 403 (1976)) (alteration in original).  Under that standard, communications involving in-house counsel "warrant[] heightened scrutiny because in-house counsel may act as integral players in a company's business decisions or activities, as well as its legal matters." *Id.* (cleaned up).  Although federal law does not govern the scope of privilege in this litigation, the Court finds that principle consistent with California law recognizing that privilege does not attach to communications where an attorney provides business advice rather than legal advice, or where an attorney is merely "copied in" on internal business communications.  *See Zurich Am. Ins.*, 155 Cal. App. 4th at 1504.

## III. ANALYSIS

### A. Document No. 15351[2]

This document is described in Defendants' privilege log as follows:

> Email which includes an attachment from in-house counsel that includes their advice and analysis on customer support interactions related to the firmware updater, and subsequent internal discussion of in-house counsel's proposed language.

ECF No. 176-1 at 5.[3]  From the face of the document, the email chain originated with discussion of how to respond to questions from a reporter, and shifted from there to address drafting an article for an internal knowledge base.

Defendants produced a redacted version of the document as Bates numbers WD00093931 through WD00093935, leaving the first few emails unredacted.  Defendants redacted the beginning of an email that was directed in part to Assistant General Counsel Ravi Puri, as well as

---

[2] Defendants' numbering scheme for documents withheld as privileged consists of a base number with page numbers indicated after a decimal point.  For example, this five-page document runs from page 15351.1 to page 15351.5.  Defendants refer to documents as a whole by listing the full page range for a given document. *E.g.*, ECF No. 184-1, ¶ 18 ("15351.1-15351.5 – This document is an email communication . . . .").  For convenience, this Order refers to documents as a whole by their base numbers without any decimal.  This Order refers to specific pages using the appropriate decimal(s) after the document number, with citations structured as "Doc. No. XXXXX.X."

[3] This description comes from the "Subject Matter Description" column and is included here as a general summary of the document.  Other columns provide additional descriptions of the document and Defendants' reasons for redacting it.

4

1   all subsequent substantive communications.  In his declaration, Puri describes the redactions as
2   follows:

> This document is an email communication from the communications team to the product marketing team and me, related to approval of external messaging concerning the firmware updater. The redacted portion reflects my legal advice, analysis, and direct feedback regarding the product messaging. The subsequent discussions among non-legal personnel relate to my feedback.

ECF No. 184-1, ¶ 18.

The first partially redacted email, from Eddy Kim at 7:30 PM on May 22, 2023, is directed to "Ravi / Lisa," Doc. No. 15351.3, with the latter being Lisa Neitzel, Defendants' Vice President of Corporate Communications, *see* ECF No. 176-1 at 5.  Other participants' titles are included in Defendants' privilege log, *id.*, and there is no indication that anyone other than Puri is a lawyer.[4] Kim's email states that he is transmitting a draft of a knowledge base article for review (implicitly for feedback from Puri and Neitzel), and notes the status of a technological response to a problem.  Although such an email would likely be privileged if sent only to counsel, this email is directed equally to Neitzel (a communications executive) and would apparently have been sent in a substantially identical form to her if Kim had sought Neitzel's and Puri's advise separately rather than in the same email.  Because "a business purpose would have served as a sufficient cause . . . even if there had been no perceived additional interest in securing legal advice," that email is not privileged.  *See Wisk Aero*, 2023 WL 2699971, at *4.  That Puri was "copied in" on Kim's implicit request for feedback from a communications professional does not render that communication privileged.  *See Zurich Am. Ins.*, 155 Cal. App. 4th at 1504.  This email must therefore be produced.

The next email in the chain is from Puri at 10:24 PM the same day, and although it does not on its face include legal advice, the Court accepts Puri's declaration that it was sent for that purpose.  Doc. No. 15351.2–3.  That email may remain redacted.

---

[4] In the parties' original joint letter regarding this dispute, Defendants stated that "the legal team members in the privileged documents were Ravi Puri, Salman Alam, and Lili Gecale."  ECF No. 176 at 3.  Alam and Gecale do not appear in this document.

5

Kim's next email, on May 23, 2023, is again directed equally to Neitzel and Puri, and does not specifically seek legal advice. Doc. No. 15351.2. Three bullet points respond to specific comments in the draft document, without indicating who provided those comments. Crediting Puri's declaration that the redactions reflect his legal advice, and lacking evidence to the contrary, the Court will allow those bullet points to remain redacted. The final bullet point is directed specifically to Neitzel. That bullet point, and the remainder of this email from Kim (i.e., everything except the first three bullet points), must be produced unredacted.

Other than a 3:37 PM email from Christine Garza that simply added another participant to the conversation (which Defendants did not redact), the remainder of the discussion is an email from Neitzel that is specifically directed to Kim, and a response from Kim that is specifically directed to Neitzel. Doc. No. 15351.1–2. Both discuss technological issues and communications concerns, and neither on its face requests, conveys, or reveals legal advice. Even if the Court accepts Defendants' characterization of those emails as "*related to* the legal advice and analysis that Mr. Puri transmitted," ECF No. 184 at 3 (emphasis added), that is not the test for whether a document is privileged. Those emails must be produced unredacted.

### B. Document No. 16455

This document is an email chain that begins with an email from Neitzel at 7:55 PM on March 2, 2023, recapping a meeting and seeking "BU & Legal approval" of certain topics and a draft "Reactive Press Statement." Doc. No. 16455.2–3. It then includes three emails sent by non-lawyers Christina Garza and Joanna Andrade on March 22 and 23, 2023, addressed to each other and to Neitzel. Doc. No. 16455.1–2. Puri describes the document as follows in his declaration:

> This document is an email from the communications team on March 2, 2023, summarizing a discussion involving myself and members of the product marketing team regarding a proposed external statement related to certain solid-state drives at issue in this litigation. While this document only reflects communications from March 22 and 23 of 2023, my legal advice and analysis to the original March 2, 2023, email was provided in a different email thread not included in this document (document #22001.1 on the privilege log). Regardless, the contents of this document reflect and relate to the privileged discussion from March 2, 2023, and remain protected.

ECF No. 184, ¶ 17.

1      To the extent that Defendants assert that the draft press statement "reflects" legal advice,

2  this Court has addressed such issues in another case as follows:

> For this and other documents, Uber appears to rely at least in part on a premise that any internal documents that "reflect" legal advice can be claimed as privileged. It is true that courts—including this Court— have used that term in the context of privileged internal communications. *See, e.g.*, *Zurich Am. Ins.*, 155 Cal. App. 4th at 1502. In context, however, the sort of "reflective" communications that courts have treated as privileged are those that effectively *convey* advice to other employees, or otherwise tend to *reveal* the substance of that advice. *See id.* ("If legal advice is *discussed or contained in* the communication between Zurich employees, then to that extent, it is presumptively privileged. A communication *reflecting* a discussion of litigation strategy which *expresses that the strategy is in response to advice of counsel* would come within the privilege." (emphasis added)). But the mere fact that an internal communication *benefited* from legal advice does not render it privileged.
>
> For example, if a human resources director has received training from in-house counsel regarding subject matter that should or should not be addressed when drafting notices of termination of employment, any such notices that the director later writes could be said to "reflect" that advice, but the notices would not themselves be privileged. On the other hand, if the director wrote to a subordinate who also prepared termination notices that, for example, "in-house counsel has asked that grounds for termination be discussed only in general terms because any error in the details could increase the risk of litigation," that communication would likely be privileged.

*In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, No. 23-md-03084-CRB (LJC), 2024 WL 4907142, at *4 (N.D. Cal. Nov. 27, 2024). The draft press statement here falls, at most, in the category of having *benefited* from legal advice, not as conveying or revealing the substance of such advice.

The first email in this chain likely would have been privileged if it sought approval only from the legal team, but as with the document discussed above, it is apparent from the face of the document that Neitzel's request for approval from the "BU team"—perhaps "Business Unit," but in any event, there is no indication that "BU" refers to a separate legal team—would have been substantially identical if sent separately from her request for approval from Legal. Combining the two requests does not allow Defendants to shield from disclosure Neitzel's request for *business* approval of this press statement. *See Wisk Aero*, 2023 WL 2699971, at *4; *Zurich Am. Ins.*, 155 Cal. App. 4th at 1504. Defendants may narrowly redact specific references to requesting *legal*

7

approval if they wish. Based on the Court's review of this document, each such redaction would be limited to one or two words.

The subsequent discussion around three weeks later between Garza and Andrade, each portion of which is specifically addressed to a non-lawyer employee, is even further removed from any request for or transmission of legal advice. Garza and Andrade's emails do not on their face convey legal advice, and instead   Those emails must be produced unredacted.

### C.     Document No. 17339

This document is an email chain from March 1 and 2, 2023. In the original email, Product Communications employee Carrie Fung provided an update on inquiries Defendants had received and sought advice from a group of both lawyers (Puri, as well as Lili Gecale) and non-lawyers regarding a draft press statement. Doc. No. 17339.2–3. As with other documents above, it is apparent from the face of this document that the original email "would have been made because of a business purpose"—here, seeking feedback from non-lawyers on the draft press statement—"even if there had been no perceived additional interest in securing legal advice." *See Wisk Aero*, 2023 WL 2699971, at *4. To the extent that it might "reflect" legal advice, it does not convey or reveal such advice. That email must be produced.

In the second email, sent by Fung at 4:26 PM on March 1, 2023, Defendants may redact the two words following the words "Hi again." *See* Doc. No. 17339.2. The remainder of that email describes Fung's own conduct and requests thoughts from other non-lawyers, and must be produced unredacted.

Defendants have already produced all subsequent emails in the redacted version of this document at Bates numbers WD00093925 and –26.

### D.     Document No. 22007

This document consists of an email from Neitzel that the Court is ordering Defendants to produce as part of Document No. 16455, followed by an email from Puri conveying legal advice, which is privileged on its face. Defendants provided this document "for *in-camera* review to assist with [the Court's] determination on #16455.1." ECF No. 184 at 3 n.1. Plaintiffs apparently do not challenge this privilege designation. This document is privileged, and Defendants need not

8

1 produce it.

### E.     Document No. 23442

This document is a lengthy email chain, which was produced with redactions as Bates numbers WD00093912 through –21.  A stretch of emails in the middle of the conversation are redacted, beginning with an email from non-lawyer James Chillemi ("Senior Director, Chief of Statff to Sales and Marketing," ECF No. 176-1 at 6) at 12:35 PM on February 9, 2023 and ending with an email from Puri at 5:49 PM the same day.  WD00093913–17.  Puri describes the document as follows in his declaration:

> This document is an email communication involving members of the communications and product marketing teams concerning the stop-ship hold for certain solid-state drives at issue in this litigation. I was added to the thread to provide legal advice and analysis regarding the appropriate language for the stop-ship communication, which I subsequently provided. The information that was provided to me in this email was necessary for me to render my legal advice.

ECF No. 184-1, ¶ 20.

The first redacted email from Chillemi consolidated a number of questions and updated the subject line to indicate attorney-client privilege "at Ravi[ Puri's] request."  Doc. No. 23442.5.  In subsequent emails, other employees responded to those questions and sought clarification from Puri on what information he needed.  Doc. No. 23442.4–5.  Chillemi then consolidated the answers to the questions and explicitly requested advice from Puri, which Puri provided.  Doc. No. 23442.2–3.  Those redacted emails are privileged, and Defendants need not produce them.

Defendants properly produced the remaining emails in this conversation unredacted and need not produce anything further from this document.

### F.     Document No. 23506

This is a collaboratively edited document with changes tracked from multiple users, including comments from users designated as RP (apparently Puri), LN (apparently Neitzel), and NN (apparently Nikki Naidu, responsible for "Global Customer Support Strategy & Leadership," *see* ECF No. 176-1 at 6).  Puri describes the document as follows in his declaration:

> This document is a draft Word document for messaging to our

> customers, of which certain customers are subject to non-disclosure agreement, related to the solid-state drives at issue in this litigation. I provided legal advice and analysis, including direct feedback and legal review of customer support messaging related to a firmware update for certain solid-state drives at issue in this litigation to assess what legal issues might be presented.

ECF No. 184-1, ¶ 13.

This Court has addressed similar collaborative documents in the *Uber* litigation and found them not be privileged:

> If this draft had been created specifically for the purpose of seeking legal advice regarding potential risks of sending the email as written, it would likely be privileged. But in the absence of a declaration by [its author] or contemporaneous documentation indicating such intent, and taking into account the fact that the document included non-lawyer collaborators, Uber has not met its burden to show that this document is a privileged attorney-client communication.

*In re Uber*, 2024 WL 4907142, at *3.

Defendants here have similarly failed to establish that this draft was created specifically for the purpose of seeking legal advice. It appears on its face to have been created for a business purpose. None of the comments from other users besides Puri either seek or convey legal advice, nor are any of them specifically directed to Puri or another lawyer.

Puri's comments perhaps toe the line between public relations or business advice as compared to legal advice, but none are overtly directed to non-legal concerns. The Court accepts that they were informed by his legal opinions and intended as legal advice. Those comments are therefore privileged.

If Puri's edits and comments are the most recent changes to this document, and Defendants have separately produced an otherwise identical version of the document predating those changes, Defendants need not produce this document. Otherwise, Defendants must produce this document, but may redact Puri's comments. Defendants may also redact any tracked changes that Puri made to the document.

### G.     Document No. 45120

This document is a Microsoft Teams chat transcript involving Puri and non-lawyers Garza, Chillemi, Neitzel, and Jeff Tsujimoto. Most of the conversation relates to seeking and obtaining Neitzel's review of a draft document for public relations purposes. Defendants may redact the one

message in this conversation from Puri, but must produce the remainder of this document, which is a conversation among business and communications professionals that apparently would have occurred in substantially identical form regardless of Puri's participation.

### H. Document No. 45146

This document is a draft communication to Defendants' customers regarding a firmware update. According to Puri, it is "the original message [for which he] provided legal advice and analysis as mentioned in 45120.1." ECF No. 184-1, ¶ 15. Based on the Court's review of Document No. 45120, this draft was provided to several other non-lawyer executives for their review, not only for Puri's legal review, and thus "would have been made because of a business purpose, even if there had been no perceived additional interest in securing legal advice." *See Wisk Aero*, 2023 WL 2699971, at *4. Defendants must produce this document.

### I. Document No. 74320

This document is a Microsoft Teams chat transcript that Defendants produced with redactions as Bates numbers WDC TEAMS0006699 through –6701. The redacted messages consist of other employees asking Puri questions and Puri responding to them. Puri's explanation that he "provided legal advice and analysis in the redacted portion for allegations for an initial communicated related to the hardware components of certain solid-state drives at issue in this litigation" is accurate. ECF No. 184-1, ¶ 21. The redacted portions are privileged, and Defendants need not produce anything further with respect to this document.

## IV. CONCLUSION

Defendants are ORDERED to produce documents consistent with the Court's analysis above no later than August 7, 2025.

If Defendants file a motion for relief from this Order under Civil Local Rule 72-2 by that deadline, Defendants' obligations under this Order shall be stayed pending Judge Lin's resolution of the motion for relief. If Judge Lin denies such a motion in whole or in part, Defendants must

///

///

///

1  produce documents consistent with that disposition no later than two business days after Judge

2  Lin's order, unless Judge Lin sets a different deadline.

3  **IT IS SO ORDERED.**

4  Dated: July 31, 2025

_____
LISA J. CISNEROS
United States Magistrate Judge

12