UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE SANDISK SSDS LITIGATION | Case No.  23-cv-04152-RFL |
| | **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION AND DENYING RULE 702 MOTIONS** |
| | Re: Dkt. Nos. 206, 207, 209, 210, 211 |

Plaintiffs filed this consolidated putative class action against Defendants SanDisk LLC, Western Digital Corporation, and Western Digital Technologies, Inc. on behalf of themselves and all others similarly situated, alleging they purchased solid-state drives ("SSDs") that Defendants defectively designed and manufactured at a price above that which they and putative class members would have paid had they known about the defects.  (Dkt. No. 94 ("Compl.").)  Plaintiffs now move to certify under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) a nationwide class of individuals who purchased the defective SSDs and three subclasses for residents of California, Florida, and New York.  (Dkt. No. 206.)  Plaintiffs also move to exclude the opinions of one of Defendants' experts under Federal Rule of Evidence 702 (Dkt. No. 207), and Defendants move to exclude the opinions of three of Plaintiffs' experts on that same basis. (Dkt. Nos. 209–11.)  For the reasons that follow, the Rule 702 motions are **DENIED**, and

1

Plaintiffs' motion for class certification is **GRANTED IN PART AND DENIED IN PART** to certify California and Florida classes as to certain claims, as set forth below.

## I.     BACKGROUND

### A.     Factual Background

#### 1.     The "Impacted Drives"

Defendants are technology companies that engage in the manufacture and sale of data storage devices including external solid-state drives, known as SSDs.  Users rely on SSDs to transfer and store data reliably and securely.  (*E.g.*, Dkt. No. 206-1, Ex. 1 at 48:18–20; Dkt. No. 206-1, Ex. 7 at 50:3–12.)[1]  In 2020, Defendants released the Western Digital My Passport Portable SSD, the SanDisk Extreme Portable SSD, and the SanDisk Extreme Pro Portable SSD. (*See* Dkt. No. 100 at ¶ 32.)  In its marketing materials, Defendants' product marketing team identified that these drives were "fast," "reliable," "dependable," and "durable."  (*See, e.g.*, Dkt. No. 206-1, Ex. 7 at 45:22–47:13; Dkt. No. 206-1, Exs. 21–22.)  And in an official press release, Defendants stated that the SanDisk Extreme and SanDisk Extreme Pro "are purpose-built to keep up with today's high-quality content demands."  (Compl. at ¶ 32 (quoting *Western Digital Unveils Unmatched Combination of Speed and Portability with Enhanced Line of SanDisk Extreme Portable SSDs*, Western Digital (Sept. 30, 2020), https://perma.cc/A7Q2-3A7W).)

In fall 2022, Defendants introduced a new collection of internal components—*i.e.*, a new "platform"—known internally as the Atlas Refresh ("Atlas-R") platform.  (Dkt. No. 221-2 ("Agrawal Dep.") at 34:10–35:6; Dkt. No. 206-1, Ex. 12 ("Walker Rep.") at ¶ 39.)  The Atlas-R platform was to be utilized by the SanDisk Extreme and Extreme Pro SSDs, as well as other SSDs manufactured by Defendants.  (Walker Rep. at ¶ 39.) Among the models of SSDs that utilized the Atlas-R platform were the 4TB Western Digital My Passport Portable SSD; the 4TB SanDisk Extreme Portable SSD; and the 1TB, 2TB, and 4TB SanDisk Extreme Pro Portable SSD (collectively, the "Impacted Drives").  (Agrawal Dep. at 23:4–19.)  The Impacted Drives first

---

[1] All references to page numbers for documents on the docket besides depositions refer to ECF pagination.

went into production in October and November 2022. (Dkt. No. 221-36 ("Tsujimoto Decl.") at ¶ 4.)

### 2. The Alleged Defect

However, beginning shortly after the rollout of the Impacted Drives and continuing through early 2023, customers reported failures with the Impacted Drives (*see* Dkt. No. 206-1, Ex. 23 at 554; Dkt. No. 208-4, Ex. 24), specifically, that their drives would not mount to their computers and their data was "corrupt[ed] or missing entirely," (Dkt. No. 208-4, Ex. 24 at 585).[2] These failures were caused by Atlas-R platform's power management operation, the "power saving algorithm." (Walker Rep. at ¶ 39.) In prior versions of Defendants' SSDs, the SSDs "remained powered on while the host was powered on, even when there was no disk activity . . . [and] thus consumed power during these idle periods." (*Id*.) Accordingly, "to conserve power, the AtlasR platform powered down the SSD when the device was not in use." (*Id*.)

The failures would manifest when an Impacted Drive was connected to a host computer and kept idle for several hours. (Dkt. No. 206-1, Ex. 26 at 571.)[3] The problem was caused by firmware in the Impacted Drives' bridge chips. (Walker Rep. at ¶ 64.) "After the SSD has been idle" for a certain amount of time, "firmware in the bridge device enters power saving mode and signals the M.2 module to power off." (*Id*. at app. A, ¶ 2.) Subsequently, the host computer sends periodic commands to the SSD to check on the SSD's status, which "turns on the M.2 module and opens a new session." (*Id*.) "The M.2 module then returns a session ID to the bridge." (*Id*.) To signal the M.2 module to power down, the bridge must close the session with the correct session ID. (*Id*.)

---

[2] Defendants' motion for leave to file a post-hearing notice correcting Plaintiffs' counsel's characterization of the testimony of one of Defendants' 30(b)(6) witnesses is denied as moot. (Dkt. No. 234.) Plaintiffs' counsel's statement at the class certification hearing regarding the precise number of calls Defendants received concerning data loss in the Impacted Drives is not material to the Court's analysis.

[3] Though the parties do not dispute that the defect manifested on MacOS operating systems, they do dispute whether the defect manifested on Windows or other operating systems. (*Compare* Dkt. No. 206 at 13, *with* Dkt. No. 221 at 12.) In an internal PowerPoint presentation, Defendants report that they were able to reproduce the defect on Windows. (Dkt. No. 206-1, Ex. 28 at 598.)

However, the bridge will sometimes "incorrectly decode the session ID". (*Id.* at app. A, ¶ 3.) In such cases, if the incorrect session ID is used to close a session, "the M.2 module will signal a failure to the close session command," and "[t]he firmware will enter an 'infinite loop' issuing close session commands, which will always fail." (*Id.* at app. A, ¶ 4.) The "continuing series of close session commands" overwrites the command buffer. (*Id.* at app. A, ¶ 5.) When this happens, the bridge may erroneously write the data buffer to the Partition Master Boot Record. (*Id.*) "If this record is corrupted . . . the host operating system will no longer recognize the drive, and the drive will not appear in the finder window." (*Id.*) Defendants estimate that there were potentially 145,000 Impacted Drives. (Dkt. No. 206-1, Ex. 26 at 572; *see also* Walker Rep. at ¶ 33.)

### 3.     Defendants' Response to the Defect

Problems with the Impacted Drives were reported as early as the week of December 13, 2022, around a month after the Impacted Drives were first released. (Dkt. No. 206-1, Ex. 30 at 621; Tsujimoto Decl. at ¶ 4.) On January 20, 2023, APAC and North American resellers reported that approximately 10% of SanDisk Extreme and Extreme Pro drives were "randomly dropping off Mac Systems." (Dkt. No. 206-1, Ex. 29 at 613.) Consequently, Defendants commenced an investigation into the Impacted Drives in late January. (*Id.* at 608). Defendants were able to reproduce the failure on February 2, and the "[p]rimary root cause" of the failure— the power management algorithm and bridge chip's firmware—was identified on February 8. (*Id.*)

On February 17, 2023, Defendants approved a stop ship of only some of the Impacted Drives: the 4TB Extreme and Extreme Pro SSDs. (*Id.*) No further stop ships were issued, nor any recalls. (*Id.*; *see also* Dkt. No. 206-1, Ex. 7 at 106:18–23.) On March 15, 2023, Defendants completed a firmware fix and released it for all Impacted Drives that had not yet been shipped or sold. (Dkt. No. 206-1, Ex. 29 at 608, 615; *see also* Dkt. No. 206-1, Ex. 13 ("Jestice Rep.") at ¶ 25.) On May 19, 2025, when contacted by technology publication Ars Technica regarding the Impacted Drives' failures, Defendants' PR team released the following statement:

4

> Western Digital is aware of reports indicating some customers have experienced an issue with 4TB SanDisk Extreme and/or Extreme Pro portable SSDs (SDSSDE61-4T00 and SDSSDE81-4T00 respectively).  We have resolved the issue and will publish a firmware update to our website soon.  Customers with questions or who are experiencing issues should contact our Customer Support team for assistance.

Scharon Harding, *SanDisk Extreme SSDs Keep Abruptly Failing—Firmware Fix for Only Some Promised*, Ars Technica (May 19, 2023), https://arstechnica.com/gadgets/2023/05/sandisk-extreme-ssds-keep-abruptly-failing-firmware-fix-for-only-some-promised.  Later that month, Defendants issued the following statement on their website:

> We have identified a firmware issue that can cause SanDisk Extreme Portable SSD V2, SanDisk Extreme Pro Portable SSD V2, and WD My Passport SSD products to unexpectedly disconnect from a computer.
>
> To address and resolve this issue, we have developed a firmware updater tool that allows the needed firmware to be installed, enabling your continued use of the SSD on your Windows and/or macOS device.

*Your Portable SSD May Require a Firmware Update*, SanDisk, https://perma.cc/GRB2-DHTN. Defendants also confirmed that they "addressed this firmware issue in the manufacturing process, and . . . that the issue is not impacting currently shipping products."  *Id.*

In June or July 2023, Defendants made the firmware update available on their Customer Support website for consumers to download.  (Agrawal Dep. at 26:3–19.)  Defendants also provided users a "serial number lookup tool" to check if a firmware update is required for a particular SSD and resources for customers to take "the appropriate steps based on the computer operating system [they are] running" if an update is needed.  *Your Portable SSD May Require a Firmware Update*, *supra*.  Lastly, Defendants made their Customer Support team available to assist users with issues regarding the Impacted Drives, offering refunds and data recovery services if a customer requested them.  (Dkt. No. 221-5 at 108:14–20; Dkt. No. 221-14 at 98:7–10.)

### B.    The Proposed Class Representatives

The proposed class representatives are Matthew Perrin, Brian Bayerl, Saif Jafri, Sean Adair, Matthew DeBonis, and Li Wang.  From November 17, 2025, to April 5, 2023, Perrin, Bayerl, Jafri, and DeBonis all purchased Impacted Drives and subsequently were unable to mount their drives and access their data.  (Dkt. No. 206-1, Ex. 2 ("Bayerl Dep.") at 69:24–80:17; Dkt. No. 206-1, Ex. 3 ("DeBonis Dep.) at 58:2–68:14; Dkt. No. 206-1, Ex. 4 ("Jafri Dep.") at 29:19–24, 64:4–73:13; Dkt. No. 206-1, Ex. 5 ("Perrin Dep.") at 94:2–96:25; Dkt No. 206-1, Exs. 33–35, 39.)  In an attempt to recover his data, Bayerl spent around $6,000 on third-party data recovery services but had only limited success recovering his data.  (Bayerl Dep. at 118:2–122:9.)  Adair and Wang did not purchase Impacted Drives.  (*See* Dkt. No. 225 at 11 n.3.)

Perrin, Bayerl, Jafri, and DeBonis did not testify at deposition that they saw or relied on Defendants' statement that the Impacted Drives were "purpose-built" to fulfill modern content and storage demands.  (Bayerl Dep. at 48:2–49:24; DeBonis Dep. at 51:6–54:14; Perrin Dep. at 71:10–73:24; Dkt. No. 221-29 at 29:15–22, 37:7–43:16, 55:25–61:25, 108:3–5.)[4]  Perrin, Bayerl, Jafri, and DeBonis did state that they were unaware of the defect, and have alleged that had they known of the defect, they would not have purchased an Impacted Drive or would not have paid as much as they did for their SSDs.  (Compl. at ¶¶ 17–19, 21.)

### C.    Procedural Background

Perrin, Bayerl, and Jafri brought separate lawsuits against Defendants on August 17, 2023.  (*See Perrin v. SanDisk LLC*, No. 23-cv-04201-RFL; *Jafri v. SanDisk LLC*, No. 23-cv-04206-RFL.)  The Court consolidated their cases on October 25, 2023 (Dkt. No. 26) and added Plaintiffs Adair, DeBonis, and Wang via a Consolidated Amended Complaint on January 12, 2024 (Dkt. No. 77).[5]  The Consolidated Amended Complaint alleged that Defendants defectively

---

[4] When asked during his deposition whether he recalled ever seeing Defendants' "purpose-built" language, Jafri responded "Yes, I—do recall that there was a Version 2 that was much faster.  I don't recall the specific language, though."  (Dkt. No. 221-29 at 61:23–25.)  Jafri's answer, which does not squarely respond to the question he was asked, does not suggest that he saw or relied on the "purpose-built" language.

[5] Plaintiffs Luke Hann and Ian Wishingrad were also added, but later voluntarily dismissed their claims without prejudice.  (Dkt. No. 148).

designed and manufactured the Impacted Drives and that as a result of the Impacted Drives' alleged defect, Plaintiffs and similarly situated individuals overpaid for the drives they purchased.  The Consolidated Amended Complaint brought claims for breach of express and implied warranty, fraudulent misrepresentation, fraud by omission, negligent misrepresentation, unjust enrichment, violation of the California Consumers Legal Remedies Act ("CLRA"), violation of the California False Advertising Law ("FAL"), violation of the California Unfair Competition Law ("UCL"), violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), violation of the New York Consumer Protection Law ("NYCPL"),  and violation of the Oregon Unlawful Trade Practices Act.  (*Id*.)  The Consolidated Amended Complaint requested monetary, injunctive, equitable, and declaratory relief.  (*Id*. at 46–47.)

On February 9, 2024, Defendants moved to dismiss the Consolidated Amended Complaint. (Dkt. No. 81.)  On June 5, 2024, the Court granted in part and denied in part the motion.  (Dkt. No. 93.)  The Court granted with leave to amend the motion to dismiss (a) the claims for injunctive, declaratory, and equitable relief as to all Plaintiffs besides Jafri; (b) any Song-Beverly Act claims; (c) Plaintiffs' breach of express warranty claims besides, as relevant here, those arising from Defendants' statement that the SSDs were "purpose-built" to keep up with modern content demands; (d) the fraudulent misrepresentation claims as to all Plaintiffs besides Jafri; (e) the negligent misrepresentation claims as to all Plaintiffs besides Jafri; and (f) the state consumer protection claims to the extent that they are based on alleged misrepresentations.  (*Id*. at 9.)

Plaintiffs filed the operative Second Consolidated Amended Complaint on June 21, 2024. (Dkt. No. 94.)  The operative complaint comprises claims for breach of express warranty, breach of implied warranty, fraudulent misrepresentation, fraud by omission, negligent misrepresentation, unjust enrichment, violation of the CLRA, violation of the FAL, violation of the UCL, violation of the FDUTPA, violation of the NYCPL, and violation of the Oregon Unlawful Trade Practices Act, and requests monetary, injunctive, equitable, and declaratory relief.  (*Id*.)

## II.      LEGAL STANDARD

### A.      Motion for Class Certification

Class certification under Rule 23 is a two-step process. First, a plaintiff must demonstrate that the four requirements of Rule 23(a) are met: "numerosity," "commonality," "typicality," and "adequacy." "One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Class certification is proper only if the trial court has concluded, after a "rigorous analysis," that Rule 23(a) has been satisfied. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (internal quotation marks omitted).

Second, a plaintiff must also establish that one of the bases for certification in Rule 23(b) is met. Plaintiffs invoke Rule 23(b)(3) and 23(b)(2). Rule 23(b)(3) requires plaintiffs to prove the additional elements of "predominance" and "superiority"—*i.e.*, that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(2) requires the Court to find that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

The party seeking class certification bears the burden of demonstrating by a preponderance of the evidence that the applicable requirements of Rule 23 are met. *See Wal-Mart Stores, Inc.*, 564 U.S. at 350 ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.").

### B.      Federal Rule of Evidence 702

Federal Rule of Evidence 702 provides that expert testimony may be admitted only if its proponent demonstrates that "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."

To "evaluat[e] challenged expert testimony" at the class certification stage, courts use the *Daubert* standard. *Johnson v. Glock, Inc.*, No. 20-cv-08807-WHO, 2024 WL 4479863, at *4 (N.D. Cal. Sept. 30, 2024) (quoting *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018)).  Under *Daubert*, a court must determine whether the expert testimony "rests on a reliable foundation and is relevant to the task at hand." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043 (9th Cir. 2014) (internal quotation marks omitted).  Expert testimony "is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry" and "reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Id*. at 1044.  Reliability concerns the soundness of the expert's methodology, not the correctness of their conclusions. *See id*.

## III.   DISCUSSION

### A.      Rule 702 Motions

The parties move to exclude certain opinions proffered by the other side's experts under Federal Rule of Evidence 702 and *Daubert*.  For the reasons provided below, the motions are denied.

#### 1.      Martin Walker

Plaintiffs move to exclude certain expert opinions of Martin Walker, specifically, his opinions that (a) the Impacted Drives contain a backup copy of the data stored on them and (b) an experienced user can restore allegedly lost data using that backup copy.  (Dkt. No. 207.) Plaintiffs argue (1) that the technical specifications Walker cites in support of his opinions do not

indicate that the Impacted Drives contain a backup copy of the data stored, (2) that Walker's opinion was not the product of testing by him or Defendants' employees, and (3) that an ordinary user cannot restore their data without a publicly available copy of the Impacted Drive's logic board's ("PBMR") firmware.

The motion is denied. Though neither Walker nor Defendants' employees tested whether allegedly lost data could be recovered, Walker's opinions are based on his experience and his review and analysis of thousands of pages of technical documents from this case. (Dkt. No. 217 at 3.) Whether Walker's opinion regarding the existence of a backup copy of data on an Impacted Drive is supported by the facts goes to the weight, not admissibility, of Walker's testimony. *See Hemmings v. Tidyman's Inc.,* 285 F.3d 1174, 1188 (9th Cir. 2002); *cf. City of Pomona*, 750 F.3d at 1049 ("A factual dispute is best settled by a battle of the experts before the fact finder, not by judicial fiat."). Indeed, Walker stated during his deposition that the very opinion Plaintiffs seek to exclude was an imprecise statement. (*See* Dkt. No. 217-2 at 20:13–18, 75:6–78:10.) This suggests that cross-examination is the proper mechanism by which to explore Plaintiffs' arguments against Walker's opinions. *See Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010), *as amended* (Apr. 27, 2010). The same is true of Plaintiffs' argument that an ordinary user cannot access an Impacted Drive to recover data without a publicly available copy of the PBMR's firmware. Accordingly, Plaintiff's Rule 702 motion to exclude Walker's opinions is denied.

### 2. Steven Gaskin

Defendants move to exclude the expert opinions of Steven Gaskin, one of Plaintiffs' damages experts, who designed a conjoint survey to estimate the price premium attributable to the Impacted Drives' alleged defect. (Dkt. No. 211.) Defendants argue (1) that Gaskin relied on only four documents produced by Defendants to reach his opinions, suggesting his opinions are not based on sufficient facts or data; (2) that his proposed survey fails to explain essential terms, present meaningful choices, and consider supply-side factors; and (3) that the "data loss attributes" of the survey are at odds with the facts of the case. (Dkt. No. 211-1 at 5–6.)

Defendants' motion is denied.  The fact that Gaskin reviewed only a limited number of Defendants' documents in his analysis and that Gaskin assumed permanent data loss in creating his conjoint survey goes to the credibility of his testimony, not its admissibility.  Gaskin is a damages expert, not a technical expert, and accordingly did not need to review a significant number of technical documents to form his opinion.  Gaskin's opinion concerned only the extent of Plaintiffs' price premium damages and permissibly assumed liability as alleged (including permanent data loss) for purposes of his damages calculations.  *See GSI Tech., Inc. v. Cypress Semiconductor Corp.*, No. 11-cv-03613-EJD, 2015 WL 364796, at *4 (N.D. Cal. Jan. 27, 2015).

The correctness of Gaskin's factual assumptions, including whether the options listed in the proposed survey are indeed possible, is a subject for cross examination.  *Id*.  Similarly, Gaskin's alleged failure to define certain concepts in his proposed survey does not suggest that the methodology of his survey was unreliable.  And in any event, generally, "[c]hallenges to survey methodology go to the weight given the survey, not its admissibility."  *Orshan v. Apple Inc.*, No. 14-cv-05659-EJD, 2023 WL 3568079, at *2 (N.D. Cal. Mar. 31, 2023) (quoting *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997)).

Defendants' argument regarding the sufficiency of Gaskin's consideration of supply-side factors does not render Gaskin's opinions inadmissible either.  Gaskin stated that his analysis did in fact take into account supply-side factors.  (*E.g.*, Dkt. No. 206-1, Ex. 14 at ¶ 24 ("[T]he conjoint methodology set forth in this Declaration accounts for appropriate supply side factors, including that (1) the price range to be used in the survey will reflect the actual market prices that prevailed during the Class Period; and (2) the quantity of Class Products to be used (or assumed) in the damages calculations will reflect the actual quantity of such products sold during the Class Period (the number of Class Products sold being fixed as a matter of history).").)  Accordingly, the Court cannot conclude that Gaskin neglected to consider supply-side factors such that his opinions should be excluded under Rule 702.  *See Lessin v. Ford Motor Co.*, No. 19-cv-01082-AJB-AHG, 2024 WL 5007092, at *5 (S.D. Cal. Oct. 31, 2024).

Defendants' motion to exclude Gaskin's opinions is denied.

### 3.    Colin Weir

Defendants also move to exclude the opinions of Colin Weir, another one of Plaintiffs' damages experts, who helped design the conjoint survey with Gaskin and provided a framework for calculating damages.  (Dkt. No. 210.)  Defendants argue (1) that Weir's testimony is not based on sufficient facts or data because he reviewed only a limited number of documents to form his opinions; (2) that his role in this case is to perform mere arithmetic, which does not require expert testimony; (3) that his opinions are unreliable because they rely on the results of Gaskin's conjoint survey and fail to consider supply-side factors; and (4) that Weir has not conducted any actual analysis as required by the Court's scheduling order.

The motion is denied.  First, Weir's testimony is based on sufficient facts and data.  In his expert report, Weir explains the methodology behind his damage calculation, the logic behind incorporating Gaskin's conjoint survey, how final damages will be calculated, and the materials he reviewed and considered.  (Dkt. No. 206-1, Ex. 15 at ¶¶ 10, 14–36, 63–65.)  Defendants' arguments go to whether additional evidence not relied upon by Weir corroborates his conclusions, and therefore do not render Weir's opinions inadmissible.  *See Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1026 (9th Cir. 2022).  Second, Weir's opinions are proper expert testimony, as they go beyond mere arithmetic.  Indeed, Weir's opinions include a discussion of the design of the conjoint survey and an analysis of historical sales data regarding the Impacted Drives, both of which are the proper subject of expert testimony.  (Dkt. No. 206-1, Ex. 15 at ¶¶ 56–61.)

Third, for similar reasons as those discussed with regard to Gaskin, Weir's testimony takes into account supply-side factors.  Weir's report details his and Gaskin's consideration of supply-side factors, including market characteristics and supply quantity.  (*Id*. at ¶¶ 37–54.)  Defendants' arguments thus concern the sufficiency of Weir's consideration of supply-side factors.  Those are appropriate subjects for cross examination and do not suggest that Weir's opinions are inadmissible under Rule 702.  *See Lessin*, 2024 WL 5007092, at *5.  Furthermore, because Gaskin's opinions are not impermissibly unreliable, Weir's reliance on Gaskin's

opinions does not render Weir's opinions unreliable.  Finally, the deadline in the Court's scheduling order pertained only to expert reports supporting or opposing class certification, so Weir was not required to execute his damages model at the class certification stage.

Defendants' motion to exclude Weir's opinions is denied.

### 4.    Ian Jestice

Lastly, Defendants move to exclude the opinions of Ian Jestice, Plaintiffs' software expert, who opines on the existence of the alleged defect in the Impacted Drives and the root cause of the defect.  (Dkt. No. 209.)  Defendants argue (1) that Jestice's principal opinion regarding the existence of the defect goes to an uncontested point, (2) that Jestice's opinions regarding the probability of users experiencing the defect and the potential impact of the defect on a user's data are based on a limited review of documents produced by Defendants and thus are not supported by sufficient facts or data, and (3) that his opinions are merely based on misunderstandings of Defendants' own findings and therefore are not reliable.

The motion is denied.  First, Defendants cite no authority for the proposition that Jestice's opinion regarding the existence of the defect is inadmissible simply because the parties agree the defect existed.  Even if the parties agree that the Impacted Drives had a defect, Jestice's opinion corroborates the existence of the defect and explains how it manifested, and therefore, is relevant to a key issue in the case.  *Cf. Boyd v. City & Cnty. of San Francisco*, 576 F.3d 938, 943 (9th Cir. 2009) ("Evidence may be relevant even if it is redundant or cumulative, or if it relates to undisputed facts.").  Second, the number of documents Jestice reviewed does not render his opinion inadmissible but instead bears on the weight to be given to his opinion.  *In re PFA Ins. Mktg. Litig.*, No. 18-cv-03771-YGR, 2022 WL 3146557, at *2 (N.D. Cal. June 15, 2022) ("Defendants' arguments as to whether the documents that Snyder reviewed are sufficiently comprehensive or representative goes to the weight to be given to Snyder's opinions, not their admissibility.").  Finally, Jestice permissibly described data as being "lost" when customers were unable to access it without the assistance of data recovery professionals.  To the extent that Defendants dispute that characterization, that is an appropriate subject for cross-examination and

is not a reason to exclude his opinions. *See Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 n.14 (9th Cir. 2004).

Defendants' motion to exclude Jestice's opinions is therefore denied.

### B.    Motion for Class Certification

#### 1.    Standing

"The Court has an independent duty to determine a plaintiff's standing to sue." *Brill v. Chevron Corp.*, No. 15-cv-04916-JD, 2017 WL 76894, at *2 (N.D. Cal. Jan. 9, 2017). To demonstrate standing under Article III, a plaintiff must show "(1) [they have] suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Cal. Sea Urchin Comm'n v. Bean*, 883 F.3d 1173, 1180 (9th Cir. 2018) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)), *as amended* (Apr. 18, 2018).

The UCL, FAL, and CLRA also have their own statutory standing requirements beyond that of Article III. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013).

Defendants argue that all of the named plaintiffs besides Jafri lack standing to sue because they have failed to establish that they purchased an Impacted Drive. (Dkt. No. 221 at 19–20.) Plaintiffs concede that Adair and Wang did not purchase Impacted Drives and therefore, that they lack standing to sue. (Dkt. No. 225 at 11 n.3.) The remaining Plaintiffs have proffered receipts confirming that they purchased Impacted Drives during the period in which the alleged defect existed, which is sufficient to establish by a preponderance that they have suffered an economic injury, that is, paying a price premium for the SSDs they purchased. (Dkt No. 206-1, Exs. 33–35, 39.) Plaintiffs therefore sufficiently demonstrated that they have standing under Article III as well as the UCL, FAL, and CLRA. *Cf. Hinojos*, 718 F.3d at 1104–08 (concluding plaintiff had standing to sue under the UCL, FAL, and CLRA based on allegations that he

14

purchased an item based on false price information and would not have made the purchase but for that misrepresentation).

### 2.      Rule 23(a) and Rule 23(b)(3)

Plaintiffs propose to certify a nationwide class for their claims for breach of express warranty; breach of implied warranty; fraudulent misrepresentation; fraud by omission; negligent misrepresentation; unjust enrichment; and violation of the CLRA, FAL, and UCL.  (Dkt. No. 206 at 16.)  In the alternative, Plaintiffs seek to certify a nationwide class for their common law claims and California, Florida, and New York subclasses for their consumer protection claims.[6] Jafri and Wang seek certification of the California subclass; Bayerl, DeBonis, and Perrin seek certification of the Florida subclass; and Adair seeks certification of the New York subclass.  For the reasons discussed below, the Court certifies the following two Rule 23(b)(3) classes:

> **California Class:**  All persons residing in the State of California who purchased an Impacted Drive since 2020.

> **Florida Class:**  All persons residing in the State of Florida who purchased an Impacted Drive since 2020.

Certification is otherwise denied under Rule 23(b)(3).

### a.      Nationwide Class as to Statutory Claims

Plaintiffs' motion to certify a nationwide class under Rule 23(b)(3) for their statutory claims under the CLRA, UCL, and FAL is denied, because common issues of law would not predominate over individual issues.  *See* Fed. R. Civ. P. 23(b)(3).

California's choice of law rules determine the controlling substantive state law.  *See Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001).  Under California's choice of law rules, the constitutionality of applying California law on a class-wide basis turns on whether the class

---

[6] At oral argument, Plaintiffs' counsel raised the possibility of certifying a multi-state subclass. However, this subclass was not a part of Plaintiffs' original class certification request, and the Court declines to certify a multi-state subclass based on Plaintiffs' counsel's belated request, to which Defendants have not had an opportunity to respond. Plaintiffs have not identified any good cause for their delay.

action proponent demonstrates that "California has 'significant contact or significant aggregations of contacts' to the claims of each class member." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) (quoting *Wash. Mut. Bank v. Superior Court,* 24 Cal. 4th 906, 921 (2001)), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022). "Once the class action proponent makes this showing, the burden shifts to the other side to demonstrate 'that foreign law, rather than California law, should apply to class claims.'" *Mazza*, 661 F.3d at 590 (quoting *Wash Mut. Bank*, 24 Cal. 4th at 921).

Accordingly, California law may only be applied on a class-wide basis if the interests of other states do not outweigh California's interest in having its law applied. *Id*. This determination turns on three considerations: (1) whether the relevant law of the potentially affected jurisdictions conflict; (2) in the case of a conflict, the extent of "each jurisdiction's interest in the application of its own law under the circumstances of the particular case"; and (3) which state's interest "would be mo[st] impaired if its law were not applied." *Id*. (quoting *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 81–82 (2010)).

Given that Defendants are headquartered in California, designed and manufactured the Impacted Drives there, and also engaged in their advertising activities there, California has a significant aggregation of contacts as to the claims of each class member. (*See* Dkt. No. 206 at 17.) However, California law cannot be applied on a class-wide basis because the interests of other states outweigh California's interest in having its law applied nationwide. Despite many consumer protection laws being governed by a "reasonable consumer" standard (Dkt. No. 206 at 28), consumer protection laws vary nationwide as to whether plaintiffs must demonstrate scienter and reliance. *See Mazza*, 666 F.3d at 591. Plaintiffs argue that Defendants have not demonstrated that these differences are material. (Dkt. No. 225 at 7.) To be sure, Defendants' argument on this point is thin. (*See id*. at 7–9.) However, the evidence presented shows that the variations are material.

As to reliance, both Plaintiffs' affirmative misrepresentation-based and omission-based claims turn on contested issues of fact. For the affirmative misrepresentation-based claims, it appears likely to be a contested issue whether the putative class was exposed to the only actionable affirmative statement relevant here: Defendants' statement that the Impacted Drives were "purpose-built" for modern storage needs. (*See* Dkt. No. 221 at 24–25; Dkt. No. 93 at 5 (concluding that statements that the Impacted Drives were, among other things, "reliable," "dependable," and "durable" constitute non-actionable puffery).) But as described above, none of the named Plaintiffs have testified that they were exposed to (or relied on) this statement. Furthermore, Plaintiffs have offered no evidence that Defendants' "purpose-built" statement was made as part of a pervasive nationwide advertising campaign, and therefore they are not entitled to an inference of class-wide reliance. *See Mazza*, 666 F.3d at 595 ("An inference of classwide reliance cannot be made where there is no evidence that the allegedly false representations were uniformly made to all members of the proposed class." (quoting *Davis-Miller v. Automobile Club of S. Cal.*, 201 Cal. App. 4th 106, 125 (2011))). For Plaintiffs' omission-based claims, it is a contested issue whether the putative class would really have refused to pay the full price for Impacted Drives if they had known about the defect, which manifests only in specific situations. (Dkt. No. 221 at 12.)

As to scienter, Defendants point to evidence suggesting that they were unaware of the defect until partway through the class period and that they did not send out a notice or recall because they believed the issue would not be material to most users and that affected users could be assisted through customer support. (*See, e.g.*, Dkt. No. 206-1, Ex. 26; Dkt. No. 221-7; Agrawal Dep. at 25:3–26:19, 74:23–76:10; Dkt. No. 221-12 at 193:6–25.)

Given that there are material differences in the relevant laws of the potentially affected jurisdictions, the Court must consider other states' interests in enforcing their consumer protection laws and whether applying California law would impermissibly intrude upon those interests. *Mazza* is instructive on both points. Other states have a significant interest in "balancing the range of products and prices offered to consumers with the legal protections

17

afforded to them," in protecting their consumers from in-state injuries, and in "being able to assure individuals and commercial entities operating within [their] territor[ies] that applicable limitations set forth in [their] . . . law[s] will be available to those individuals and businesses in the event they are faced with litigation in the future." *Mazza*, 666 F.3d at 592–93 (quoting *McCann*, 48 Cal. 4th at 97–98).  Moreover, California law recognizes that "with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest"—for each putative class member, the state in which they reside.  *Hernandez v. Burger*, 102 Cal. App. 3d 795, 802 (1980).  Accordingly, while other states have a strong interest in the application of their laws to transactions that occurred within their borders between their citizens and Defendants, California has an "attenuated" interest in "applying its law to residents of foreign states." *Mazza*, 666 F.3d at 594.

Applying California law to those consumers' claims would therefore intrude upon other states' prerogatives to protect consumers within their borders.  *Id*. at 591–94.  As such, certification of a nationwide class to assert these claims is inappropriate.  "[E]ach class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Id*. at 594.  Plaintiffs' request to certify a nationwide class for their statutory claims is denied.

### b.    Nationwide Class as to Common Law Claims

Plaintiffs also propose to certify a nationwide class applying California law to their common law claims.  This proposal is similarly denied.

As to the claims for breach of express warranty, fraudulent misrepresentation, and negligent misrepresentation, common issues of fact do not predominate, even assuming California law applies.  "Predominance is satisfied only 'when common issues represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication.'" *James v. Uber Techs. Inc.*, 338 F.R.D. 123, 135 (N.D. Cal. 2021) (quoting *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1182 (9th Cir. 2015)).  Though each element of the

claim need not be susceptible to class-wide proof, one or more common questions must predominate. *See id*.

The express warranty, fraudulent misrepresentation, and negligent misrepresentation claims all require members of the putative class to have relied on Defendants' "purpose-built" statement, the only actionable statement relevant in the case. *See Hong v. RugsUSA, LLC*, 810 F. Supp. 3d 1050, 1062–63 (N.D. Cal. Sept. 23, 2025) (express warranty); *Mewawalla v. Middleman*, 601 F. Supp. 3d 574, 600 (N.D. Cal. 2022) (fraudulent and negligent misrepresentation). However, none of the named Plaintiffs testified that they relied on that statement. And for the reasons described above, the evidence presented does not support a class-wide inference of exposure to the statement. Therefore, as to these claims, individualized questions of reliance predominate.

As for the remaining common law claims, material differences in state law preclude certification of the nationwide class. Regarding breach of implied warranty, states vary in their privity requirements. *See, e.g.*, *Darisse v. Nest Labs, Inc.*, No. 14-cv-01363-BLF, 2016 WL 4385849, at *12 (N.D. Cal. Aug. 15, 2016). Privity is material because the Plaintiffs who purchased Impacted Drives did so using Amazon, a third-party retailer. (*See* Dkt. No. 206-1, Exs. 33–35, 39; Dkt. No. 221-29 at 46:9–48:7.) Regarding fraud by omission, states vary in requiring scienter and intent to induce reliance. *See Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1101–02 (C.D. Cal. 2012); *cf. Vinci v. Hyundai Motor Am.*, No. 17-cv-00997-DOC-KES, 2018 WL 6136828, at *7–8 (C.D. Cal. Apr. 10, 2018) (citing chart cataloguing differences). Scienter is material for the reasons discussed above: Defendants have submitted evidence suggesting that they were unaware of the defect in the Impacted Drives until partway through the class period. Intent to induce reliance is also material because Defendants argue (and have submitted evidence) that the timing of their response was due to replicating the issue and creating the fix, as well as assessing the pervasiveness of the defect considering the number of reported failures. (Dkt. No. 221 at 11–12.) Lastly, states vary materially regarding the elements necessary to establish a claim for unjust enrichment, and Plaintiffs' theory of unjust enrichment

19

is derivative of the other common law theories.  *See Mazza*, 666 F.3d at 591.  Given other states' strong interests in protecting consumers within their borders, a nationwide class cannot be certified as to these common law claims.  Plaintiffs' request to certify a nationwide class for their common law claims is therefore denied.

### c.    State Classes

In conjunction with their proposal of a nationwide class for their common law claims, Plaintiffs propose subclasses to assert claims under California, New York, and Florida's consumer protection laws.  Each is analyzed in turn.

### i.    New York Class

A New York class cannot be certified.  Adair, the only named Plaintiff seeking to certify the New York class, did not purchase an Impacted Drive and therefore lacks standing to sue. (Dkt. No. 225 at 11 n.3.)  Because there is no named Plaintiff with standing to sue on behalf of a New York class, the Court declines to certify the class.  *Cf. In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1164 (N.D. Cal. 2009) ("A class cannot assert a claim on behalf of an individual that they do not represent.  Where, as here, a representative plaintiff is lacking for a particular state, all claims based on *that* state's laws are subject to dismissal." (cleaned up)).

### ii.    California Class

A California class is certified as to (a) Plaintiffs' UCL, CLRA, and FAL claims to the extent that those claims are based on allegedly deceptive omissions and (b) Plaintiffs' breach of implied warranty, fraud by omission, and unjust enrichment claims.  The class satisfies the requirements of Rule 23(a) and 23(b)(3).

*Numerosity*.  The class meets the numerosity requirement.  "Courts generally find numerosity is satisfied if the class includes forty or more members."  *Nightingale v. U.S. Citizenship & Immigr. Servs.*, 333 F.R.D. 449, 457 (N.D. Cal. 2019).  Defendants do not contest that the class meets the numerosity requirement.   Defendants concede that there may have been 69,173 Impacted Drives in the United States (Dkt. No. 221 at 12), and their records confirm that over forty people in California purchased an Impacted Drive (Dkt. No. 208-4, Ex. 42).

*Commonality*.  The class also meets the commonality requirement.  Commonality does not require that "*every* question of law or fact . . . be common to the class" but only "a single *significant* question of law or fact."  *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Mazza* 666 F.3d at 589).  Defendants do not contest that there are common issues of law and fact as to the California Class.  Such common issues include, *inter alia*, the existence and nature of the alleged defect, whether Defendants knew of the defect, and whether Defendants failed to disclose the defect to their consumers.  (Dkt. No. 206 at 20–21.)

*Typicality*.  Plaintiffs have demonstrated typicality.  The typicality requirement is met when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Oliveira v. Language Line Servs., Inc.*, 767 F. Supp. 3d 984, 1002 (N.D. Cal. 2025) (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010)).  Plaintiffs argue that the Impacted Drives suffered uniformly from the defect, which would cause users to lose their data.  (*See* Dkt. No. 206 at 21.)  Accordingly, Plaintiffs contend that their injuries arise from the same course of conduct, namely, Defendants' misrepresentations and obfuscations concerning the defect, which caused Plaintiffs to purchase the Impacted Drives at prices higher than those they otherwise would have been willing to pay.  (*Id*. at 21 & n.7.)  Plaintiffs' allegations are sufficient to establish typicality.

Defendants argue that Jafri, the only named Plaintiff seeking to certify the California Class who purchased an Impacted Drive, does not have typical claims.  A "motion for class certification should not be granted if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it."  *Belyea v. GreenSky, Inc.*, No. 20-cv-01693-JSC, 2025 WL 589037, at *19 (N.D. Cal. Feb. 24, 2025) (citation omitted).  However, none of the supposed "unique defenses" suggested by Defendants would render Jafri's claims atypical.  First, Defendants observe that Jafri's CLRA claim is defeated by his testimony that he purchased his Impacted Drive to monetize video footage he captured, a use which Defendants contend brings him outside the scope of the CLRA.  (Dkt. No. 221 at 31.)  Although Jafri "did hope to make some money," he stated his videography was "not a professional endeavor."  (Dkt.

No. 221-29 at 115:20–116:8.)  In any event, Defendants' argument is not unique to Jafri—it would apply to any class member who hoped to monetize their personal "vlogging," which is an aspiration that Plaintiffs argue is increasingly common.  (Dkt. No. 225 at 16.)  Whether amateur vlogging with the hopes of future monetization falls outside the CLRA's limitation to "consumers" who purchase "goods" "primarily for personal, family, or household purposes," Cal. Civ. Code § 1761(a), (d), is a "merits question likely common to many potential class members, and thus does not defeat typicality."  *King v. Nat'l Gen. Ins. Co.*, No. 15-cv-00313-DMR, 2025 WL 1294657, at *17 (N.D. Cal. May 5, 2025), *reconsideration denied*, No. 15-cv-00313-DMR, 2025 WL 1853768 (N.D. Cal. July 3, 2025), *reconsideration denied*, No. 15-cv-00313-DMR, 2025 WL 2021884 (N.D. Cal. July 18, 2025).

Second, Defendants argue that Jafri's express warranty claim fails, and therefore is not typical, because Jafri admitted that he did not return his Impacted Drive as required by Defendants' warranty.  (Dkt. No. 221 at 31 (citing Dkt. No. 81-2).)  However, this argument is again a merits question that is likely common to many members of the California class.  *See King*, 2025 WL 1294657, at *17.  Jafri's claims are therefore typical "in spite of and because of" the defenses Defendants seek to raise against them.  *Belyea*, 2025 WL 589037, at *19.

*Adequacy*.  The class representatives and class counsel will adequately represent the class.  To determine whether representation will be adequate, courts consider (1) whether the named plaintiffs and their counsel have conflicts of interest with other class members and (2) whether the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class.  *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 240 (N.D. Cal. 2014).  The adequacy requirement "tends to merge" with the typicality and commonality requirements, which ensure that "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Id*. (cleaned up).  As discussed above, Jafri has alleged an injury similar to the rest of the California Class, and his claims are not based on any unique conduct.  Furthermore, there is no evidence that Jafri or Plaintiffs' counsel have any conflict of interest, and there is no reason to believe that they will

not vigorously prosecute this action.  (Dkt. No. 206 at 23.)  Plaintiffs' counsel is experienced with class actions and has invested appropriately in developing the case thus far.

*Predominance*.  For the reasons detailed below, common issues of fact do not predominate as to Plaintiffs' UCL, CLRA, and FAL claims to the extent that those claims are based on affirmative misrepresentations.  However, common issues of fact do predominate as to (a) the UCL, CLRA, and FAL claims to the extent that those claims are based on allegedly deceptive omissions and (b) the breach of implied warranty, fraud by omission, and unjust enrichment claims.

Plaintiffs' UCL, CLRA, and FAL claims based on affirmative misrepresentations require, at the very least, exposure to the alleged actionable misrepresentation in the case: Defendants' "purpose-built" language (Dkt. No. 94 at ¶ 32).  *See Castillo v. Prime Hydration LLC*, 748 F. Supp. 3d 757, 770–71 (N.D. Cal. 2024).  But as discussed above, Plaintiffs have not submitted evidence that this statement was made so broadly that putative class members can be presumed to have seen it, or that the statement was made on the product packaging.  Plaintiffs are therefore unable to establish an inference of class-wide reliance or exposure as to their California consumer protection claims based on affirmative misrepresentations.  *See Mazza*, 666 F.3d at 595.  Individualized issues of fact—namely, whether a class member was exposed to Defendants' "purpose-built" language—predominate, and certification as to these claims is denied.

However, common issues of fact do predominate as to the UCL, CLRA, and FAL claims to the extent that those claims are based on allegedly deceptive omissions.  To be actionable under California's consumer protection laws, an "omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018) (emphasis omitted) (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal.App.4th 824, 835 (2006)).  "The duty to disclose arises when: (1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3)

when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed." *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 646 (N.D. Cal. 2021).

The question of whether Defendants should have notified purchasers of the defective drives upon learning of allegedly widespread problems in December 2022 and whether purchasers would have refused to buy the drives, returned them, or paid less if they had been told of the problems, are issues subject to common class-wide proof. For similar reasons, common issues of fact would predominate as to Plaintiffs' breach of implied warranty, fraud by omission, and unjust enrichment claims: the question of whether the Impacted Drives were fit for the "ordinary purposes for which [they] . . . are used," *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009) (internal quotations omitted), whether Defendants' failure to disclose the defect was a material omission, *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1017 (N.D. Cal. 2020), and whether Defendants unjustly profited from the sale of the Impacted Drives, *see In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 997 (N.D. Cal. 2022), are capable of determination on a class-wide basis.

Defendants argue that individualized inquiries into whether the alleged defect in fact caused a particular class member to lose data and incur data recovery costs predominate over common issues. (Dkt. No. 221 at 25–26.) However, given Plaintiffs' claimed price-premium injury, these inquiries go to whether "class members can win on the merits" and the extent of damages. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1173 (9th Cir. 2010). The need for these inquiries does not preclude certification.

Plaintiffs have also shown that "damages are capable of measurement on a classwide basis"—*i.e.*, that "the whole class suffered damages to the same injurious course of conduct underlying the plaintiffs' legal theory." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017) (internal quotation marks omitted). Plaintiffs need only show that their damages "arise from a course of conduct that impacted the class," not that "each [class] members' damages from that conduct are identical." *Id.*

If a plaintiff offers a "model purporting to serve as evidence of damages," that model must "measure only those damages attributable to [their] theory" of liability. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). A plaintiff must present "a likely method for determining class damages, though it is not necessary to show that [their] method will work with certainty at this time." *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) (internal quotation marks omitted). "[C]lass action plaintiffs may rely on an unexecuted damages model to demonstrate that damages are susceptible to common proof so long as the district court finds, by a preponderance of the evidence, that the model will be able to reliably calculate damages in a manner common to the class at trial." *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1024 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1308 (2025).

The crux of Plaintiffs' theory of liability is that Defendants misrepresented and failed to disclose the existence and nature of the alleged defect, which caused members of the proposed class to (a) pay more for the Impacted Drives than they otherwise would have and (b) incur expenses recovering data they allegedly lost as a result of the defect. (Dkt. No. 206 at 29.) Accordingly, as to the damages arising from class members' alleged overpayment for the Impacted Drives, Plaintiffs have offered the expert reports of Steven Gaskin and Colin Weir, which provide a framework for determining the amount of damages owed to each class member. (Dkt. No. 206-1, Ex. 14; Dkt. No. 206-1 Ex. 15.) Gaskin and Weir propose a conjoint survey to calculate the percentage of overpayment above the price paid. As to the damages arising from class members' data recovery expenses, Plaintiffs propose an "invoice-based formula: reimbursement of the actual out-of-pocket costs that class members paid to data recovery services to restore data rendered inaccessible by the Defect." (Dkt. No. 206 at 29.) Plaintiffs have therefore adequately demonstrated that the class's damages arise from the same course of conduct underlying their legal theory and can be calculated on a class-wide basis. *See Just Film, Inc.*, 847 F.3d at 1120.

Defendants' arguments do not suggest otherwise. Defendants argue that Plaintiffs failed to provide a "completed conjoint survey model and damages model," which Defendants contend

was required by the Court's expert discovery deadline.  However, the expert discovery deadline applies only to expert reports in support of class certification.  (Dkt. No. 137.)  At class certification, Plaintiffs may rely on an unexecuted damages model so long as they have shown that their proposed model will be able to reliably calculate damages in a manner common to the class at trial, as Plaintiffs have shown here.  *See Lytle*, 114 F.4th at 1024.

Defendants also argue that Plaintiffs' damages model does not fit Plaintiffs' actual alleged damages, which Defendants contend does not include a price premium but instead comprises "lost business, lost reputation, or lost hours."  (Dkt. No. 221 at 28.)  But Plaintiffs pled their claimed price-premium theory in the operative complaint (*e.g.,* Compl. ¶¶ 60, 112, 121, 131, 143), so Plaintiffs' experts' damages model fits the damages Plaintiffs alleged. Furthermore, while Defendants argue that Plaintiffs' deposition testimony is inconsistent with the price-premium theory, that is a merits issue, and in any event, the proposed California class representative Jafri identified the cost of the drives as a source of damages at deposition.  (*See* Jafri Dep. at 120:10–13.)  Plaintiffs have thus sufficiently demonstrated that the damages they seek are capable of class-wide measurement.

***Superiority****.*  Lastly, Plaintiffs have satisfied the superiority requirement.  In analyzing superiority, the following four non-exhaustive factors are considered:  "(1) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action." *Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 543 (N.D. Cal. 2015).  Here, the damages suffered by each member of the putative class are not large, there are no other currently pending actions against Defendants that overlap with the proposed classes, Defendants are headquartered in California, and the case appears manageable as a class action, particularly given the Court's certification of the California and Florida Classes only as to certain claims that turn on common issues.  (*See* Dkt. No. 206 at 30–31.)  *See Bias* 312 F.R.D. at 543.

Defendants' arguments do not undermine this conclusion.  First, Defendants argue that Plaintiffs' proposed class definitions are overbroad and include members who did not suffer an injury from their purchase of an Impacted Drive, specifically, individuals who purchased drives manufactured and distributed before Defendants had learned of the firmware issue and individuals who received replacement devices or refunds.  (Dkt. No. 221 at 32–33.)  But those who purchased drives before Defendants learned of the firmware issue still suffered an injury under a breach of implied warranty theory by paying for a drive that was allegedly defective.  And the record indicates that those who received replacement devices or refunds did so based on contacting Defendants after suffering data loss and other problems that are sufficient to constitute injury-in-fact.

Second, Defendants argued that their public release of the firmware update in May 2023 resolved the firmware issue.  (*Id*. at 32–33.)  But Defendants' public release was not accompanied by a recall or mass notice, so class members who are unaware of the firmware update continue to be injured by Defendants' alleged omissions.  (*See* Dkt. No. 206-1, Ex. 7 at 106:14–22; Jestice Rep. at ¶¶ 47–49; Agrawal Dep. at 25:13–22.)  Moreover, Plaintiffs have submitted evidence that the firmware updates did not reliably fix the problem.  (*See* Dkt. No. 225-1, Ex. 2 at 75:12–84:14.)

Third, Defendants argue that the alleged defect occurred only for purchasers using MacOS.  (Dkt. No. 221 at 33.)  However, as discussed above, Plaintiffs contend that the defect occurred irrespective of a user's operating system and have pointed to evidence in support of that proposition.  (*E.g.*, Dkt. No. 206-1, Ex. 28 at 598.)

The Court finds that the requirements of Rules 23(a) and 23(b)(3) are met with regard to the California Class as to the UCL, CLRA, and FAL claims to the extent that those claims are based on allegedly deceptive omissions and as to the breach of implied warranty, fraud by omission, and unjust enrichment claims.  Accordingly, the Court certifies the California Class as to these claims under Rule 23(b)(3).

### iii.    Florida Class

A Florida class is certified as to Plaintiffs' FDUTPA claims to the extent that those claims are based on allegedly deceptive omissions. The class satisfies the requirements of Rule 23(a) and 23(b)(3).

*Numerosity and Commonality*. Defendants do not contest that the class meets the numerosity requirement. Indeed, Defendants' records confirm that over forty people in Florida purchased an Impacted Drive. Furthermore, for the reasons described above as to the California Class, Plaintiffs have satisfied the commonality requirement.

*Typicality*. Typicality is also satisfied. Defendants point to statements by Bayerl, DeBonis, and Perrin, in which they stated that they hoped to monetize video footage they captured or use the Impacted Drives on "shoot[s]" or "job[s]." (Dkt. No. 221 at 31; *see also* Dkt. No. 221-22 at 16; Dkt. No. 221-20 at 6.) But as previously discussed, those statements at most present merits questions likely common to many potential class members and do not defeat typicality. Defendants also argue that Perrin's claims are not typical because he purchased some Impacted Drives on behalf of his clients and returned an Impacted Drive that he purchased and received a refund. (Dkt. No. 221 at 31 (citing Dkt. No. 221-24 at 210:20 ("I mean they replaced the drive".)).) But Perrin testified in his deposition that he purchased several Impacted Drives both for his clients with their credit card and for personal use with his own credit card. (Dkt. No. 221-24 at 60:9–62:13, 93:16–23.) Accordingly, even if Perrin returned one of the Drives he himself purchased (*see id*. at 93:5–11), he has not been made whole with regard to his price-premium damages stemming from the other Impacted Drive(s) he purchased for his own personal use.

*Adequacy*. For reasons similar to those described above as to the California Class, Plaintiffs have met the adequacy requirement.

*Predominance*. For similar reasons described above as to the California Class, common issues of fact predominate as to Plaintiffs' FDUTPA claims to the extent they are based on allegedly deceptive omissions but not insofar as they are based on affirmative

misrepresentations.  For affirmative misrepresentations, FDUTPA applies the same exposure requirement as the UCL, FAL, and CLRA do.  "[W]here a plaintiff has not seen or heard an allegedly deceptive [statement], she cannot challenge it under the FDUTPA."  *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1089 (C.D. Cal. 2015) (finding that the FDUTPA requires the plaintiff to "have been aggrieved by the alleged unfair and deceptive act" (internal quotation marks omitted)).  As discussed above, Plaintiffs have not submitted evidence that Defendants' "purpose-built" statement was made so broadly that putative class members can be presumed to have seen it.  Thus, individualized issues of whether members of the putative class were exposed to the statement predominate, and a class cannot be certified as to these claims.

For an omission-based theory, however, common issues would predominate.  "For purposes of a FDUTPA claim, deception occurs where there is a 'representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'"  *Parziale v. HP, Inc.*, 445 F. Supp. 3d 435, 443 (N.D. Cal. 2020) (quoting *Westgate Resorts, Ltd. v. Sussman*, 387 F. Supp. 3d 1318, 1363 (M.D. Fla. 2019)).  Under Florida law, a duty to disclose may arise in three circumstances: "(1) one who speaks must say enough to prevent his words from misleading the other party; (2) one who has knowledge of material facts to which the other party does not have access may have a duty to disclose these facts to the other party; and (3) one who stands in a confidential or fiduciary relation to the other party to a transaction must disclose material facts."  *In re NJOY, Inc. Consumer Class Action Litig.*, No. CV 14-00428 MMM, 2015 WL 12732461, at *14 (C.D. Cal. May 27, 2015) (internal quotation marks omitted).  As is the case with respect to the California Class, whether Defendants should have notified purchasers of the problems with the Impacted Drives upon learning about them and whether purchasers would have paid less for the Impacted Drives had they had been told of the defect are issues amenable to common class-wide proof. Furthermore, for the reasons described above, damages for the Florida Class can be calculated on a class-wide basis.

Plaintiffs have therefore demonstrated that the Florida Class satisfies the predominance requirement.

***Superiority***.  For the reasons described above, Plaintiffs have satisfied the superiority requirement.  Though Defendants are headquartered in California, not Florida, the damages suffered by each member of the putative class are not large, there are no other currently pending overlapping actions against Defendants, and the case appears manageable as a class action.

The Court finds that the requirements of Rules 23(a) and 23(b)(3) are met with regard to the Florida Class as to the FDUTPA claims to the extent they are based on allegedly deceptive omissions.  Accordingly, the Court certifies the Florida Class as to those claims under Rule 23(b)(3).

### 3.    Rule 23(b)(2) Class

The Court declines to certify a class under Rule 23(b)(2).  An injunctive class can be certified under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  A plaintiff does not need to show predominance of common issues or superiority of class adjudication to certify a Rule 23(b)(2) class.  Rather, Rule 23(b)(2) "[o]rdinarily will be satisfied when plaintiffs have described the general contours of an injunction that would provide relief to the whole class, that is more specific than a bare injunction to follow the law, and that can be given greater substance and specificity at an appropriate stage in the litigation through fact-finding, negotiations, and expert testimony." *Parsons v. Ryan*, 754 F.3d 657, 689 n.35 (9th Cir. 2014).

Plaintiffs have failed to carry their burden of demonstrating that the injunctive relief they seek is "appropriate respecting the class as a whole."  Plaintiffs "seek injunctive relief in the form of an order requiring Defendants to publish or otherwise provide class members who have lost data as a result of the Defect with any and all information necessary to recover the data through data-recovery providers."  (Dkt. No. 206 at 31.)  At the hearing on the class certification

motion, Plaintiffs' counsel stated that even individual class members who had not yet experienced data loss would benefit from the proposed injunctive relief because they would want to know (a) that there is a firmware fix for their drives and, more generally, (b) that Defendants' products have a defect and should not be used as fail-safe storage devices.  However, the proposed nationwide class and state classes nonetheless contain several groups of individuals who will not benefit from the requested injunctive relief including individuals who (a) will not use the Impacted Drives in a way that will ever cause the firmware issue, (b) have already received a refund or repair because they had issues with their drive(s) and called Defendants' customer support, (c) have already installed the firmware fix on their own using the information on Defendants' websites such that their drives are fixed, and (d) are already aware of the existence of the defect and know how to resolve any issues they might experience in the future. Although these individuals will not receive any benefit from the injunctive relief Plaintiffs request, they will nonetheless be bound without notice to the judgment in this case.

It is difficult to come up with a definition of a class that would benefit as a whole from Plaintiffs' requested injunctive relief.  Plaintiffs did not propose such an alternative definition in their motion for class certification, and it would be unfair to redefine an injunctive relief class for Plaintiffs without Defendants having an opportunity to oppose it or address potential overbreadth problems.  Accordingly, the Court declines to use its discretion to attempt to redefine an injunctive relief class for certification under Rule 23(b)(2).

## IV.    CONCLUSION

For the foregoing reasons, the motions to strike are **DENIED**.  The Court **GRANTS** Plaintiffs' Motion for Class Certification subject to the modifications set forth above.  The Court appoints Saif Jafri as representative of the California Class; and Matthew Perrin, Brian Bayerl, and Matthew DeBonis as representatives of the Florida Class.  The Court appoints Silver Golub & Teitell LLP and Bursor & Fisher, P.A. as class counsel.  Within 14 days of the date of this Order, Plaintiff shall file an amended complaint that amends the class definitions to comport with the Court's certified class definitions.  Plaintiff may not make any other substantive changes

to the complaint without court approval.  A case management conference is set for **May 27, 2026**.  The parties shall file a joint case management statement by **May 20, 2026**.

      **IT IS SO ORDERED.**

Dated: May 5, 2026

RITA F. LIN
United States District Judge